**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Smash, L.L.C.,
a Minnesota limited
liability company,

Plaintiff,

v.

New England Pottery Co., Inc.,

Defendant.

Civil No. 01-601 (DWF/SRN)

**MEMORANDUM**
**OPINION AND ORDER**

---

Jon Trembath, Esq., Merchant & Gould, 80 South 8th Street, Suite 3200, Minneapolis, Minnesota 55402 and Kirstin L. Stoll-DeBell, Esq., Merchant & Gould, 1050 17th Street, Suite 1400, Denver, Colorado 50265, appeared on behalf of Plaintiff.

Jay W. Schlosser, Esq., Briggs & Morgan, 2400 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402 and James J. Foster, Esq., Wolf, Greenfield & Sacks, Federal Reserve Plaza, 17th Floor, 600 Atlantic Avenue, Boston, Massachusetts 02210, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on September 21, 2001, pursuant to Plaintiff Smash L.L.C.'s ("Smash") Motion for Preliminary Injunction. In its Complaint, Plaintiff alleges that Defendant New England Pottery Co., Inc. ("NEPCO") is infringing Smash's patent, U.S. Patent No. 5,772,312 ("the '312 patent"), for a Lighted Holiday Ornament. NEPCO contends, however, that: (1) its product, the Starlight Sphere, does not infringe the '312 patent; and (2) the '312 patent is invalid based on certain references of prior art. For the reasons set forth below, Plaintiff's motion is granted.

FILED OCT 15 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## Background

Patent '312 relates to a lighted ornament, predominantly sold for use during the winter holiday season. The patent was issued on June 30, 1998, to inventors Susan M. Pihl-Niederman, Hollyanne M. Pihl, and Sharon P. Frederickson. On October 7, 1999, the inventors assigned their rights to the '312 patent to Smash, a limited liability corporation established by the inventors. On February 28, 2000, and November 30, 2000, Smash granted a non-exclusive license and an exclusive license, respectively, to George Tsai and his company H.S. Craft Manufacturing Company ("H.S. Craft") for the manufacture, use, and sale of the invention claimed in the '312 patent. Because Smash does not make, use, or sell the invention and has not granted any other license under the '312 patent, H.S. Craft is the exclusive manufacturer of the invention. Smash receives royalties from H.S. Craft based on its sales of the licensed invention. The exclusive license will terminate on November 30, 2001, barring any other authorized reasons for termination.

During the 2000 selling season, Defendant NEPCO bought significant stock of the licensed ornaments from H.S. Craft to be sold through NEPCO's catalog business and through QVC via television and the Internet as "the Starlight Sphere." In the fall of 2000, prior to the grant of H.S. Craft's exclusive license, NEPCO and Smash engaged in discussions about the possibility of a license for NEPCO under the '312 patent, however, no agreement was reached. Since then, NEPCO has not bought any further stock from H.S. Craft. To the contrary, NEPCO has entered into an arrangement with another manufacturer for the production, importation, and sale of an ornament called the Starlight Sphere which Smash alleges to be in complete violation of the '312 patent. NEPCO admits that it has invested significant resources in the production and advertising of the Starlight Sphere for the 2001 holiday season. NEPCO challenges Smash's

allegations by arguing that its product does not infringe the '312 patent, particularly in light of the type of corded lights used in the ornament. Moreover, NEPCO contends that the '312 patent is invalid in light of certain references of prior art which the Court will discuss below.

The current motion before the Court is Plaintiff's request for a preliminary injunction.

**Discussion**

**1. Standard of Review**

Under Eighth Circuit precedent, a preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Publ'g Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1222 (8th Cir. 1986), *cert. denied*, 479 U.S. 1070 (1987). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). In the context of a patent suit, the Federal Circuit has stated that while a court must consider all four factors in their totality as listed above, a preliminary injunction should not issue if the first two factors have not been established. *Amazon.com, Inc. v. BarnesandNoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citing *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1088 (Fed. Cir. 1988).

**2. Issues**

**a. Likelihood of Success on the Merits**

In order to establish a likelihood of success on the merits, Plaintiff must establish that it will likely be able to prove: (1) that Defendant's product infringes on the '312 patent; and (2) that the '312 patent is likely to withstand Defendant's challenges to its validity.

**i. Infringement**

In order to establish literal infringement, a patentee must prove that the accused device contains each limitation of the asserted claims. *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). In the instant case, the parties focus their infringement analysis on two claims of the '312 patent, claims 1 and 11, which state:

> 1. An ornament for use with a string of lights of the type including a plurality of light bulbs disposed on a common cord, the ornament comprising:
>
> (a) a hollow shell configured to house a portion of the string of lights with multiple light bulbs disposed within the shell such that the light bulbs housed within the hollow shell illuminate the ornament; and
>
> (b) at least one cord aperture defined in an exterior surface of the shell and configured to receive opposing ends of the portion of the string of lights housed within the shell.
>
> 11. The ornament of claim 1 wherein the hollow shell comprises a pair of shell halves.

Smash contends that NEPCO's product literally infringes on each claim. NEPCO, however, maintains that the string of lights used in its product does not result in the receipt of opposing ends by an aperture in the shell, and thus Smash is not able to meet its burden of proving infringement on each of the limitations of the asserted claims.

First, NEPCO contends that the string of lights to be used with its ornament does not contain a "plurality of lights along a common cord." In support of this contention, NEPCO relies on the distinction between a string of lights wired in series, such as the string used with NEPCO's ornament, and a string of lights wired in parallel, such as that used with Smash's ornament. Briefly, a string wired in series is comprised of a single cord from which all of the lights are wired and which begins and ends in the same plug end, albeit a plug which could contain both the male and female parts. Indeed, the exhibit of NEPCO's ornament presented to the Court contains such a plug so that the ornaments are "inter-connectable." On the other hand, a string wired in parallel is comprised of two cords twisted together, both containing lights and attaching together at one end to a female plug and to a male plug at the other.

First, the Court finds no limitation within claim 1 that requires a string of lights to be wired either in series or in parallel. Further, the Court finds no limiting language that would serve to create such a limitation as NEPCO has described. The phrase "disposed on a common cord" instead could be read to include both of the strings described, and thus it is likely that Smash could prove infringement on that issue.

To the extent that this distinction of wiring also raises the issue of whether the aperture in NEPCO's ornament is "configured to receive opposing ends" of the string, the Court also finds that Smash will likely succeed in proving infringement. The limitation requires only that at least one aperture be present and that it be configured in such a way so that it may receive the opposing ends of the string of lights. Indeed, NEPCO's ornament contains one aperture that receives the ends of the string of lights. The fact that NEPCO's string ends in one plug rather than two is not determinative. Whether the opposing ends are interpreted to be the ends of the wires or the male and female plug ends of the cord, both ornaments have an aperture which

receives the opposing ends. The plug end which feeds through NEPCO's aperture contains both the opposing male and female parts of the plug and the beginning and end of the cord from which the lights are wired. However a fact-finder interprets this claim, it is clear to the Court that Smash will likely prove infringement on this limitation as well.

The parties do not dispute that the NEPCO ornament infringes the '312 patent with respect to its additional limitations that: (1) the ornament be comprised of a hollow shell; (2) that the light bulbs be disposed within the shell so as to illuminate the ornament; and (3) that the shell be comprised of two halves. Accordingly, the Court finds it likely that Smash will prove infringement of these limitations as well. Nonetheless, despite the likelihood that Smash will establish literal infringement of the '312 patent, the Court must next evaluate the strength of NEPCO's claim that the '312 patent is actually invalid.

**ii. Invalidity**

In order to defeat a motion for preliminary injunction by a challenge of invalidity, the challenger must raise a substantial question of the validity of the patent in suit. *Amazon.com*, 239 F.3d at 1358-59. While invalidity at summary judgment and at trial must be established by clear and convincing, undisputed evidence, the bar at the preliminary injunction stage is lowered to require only a showing that the proof of validity is indeed vulnerable. *Id.* Conversely, at the preliminary injunction stage, the patentee need not establish the validity of the patent beyond question but must "present a clear case supporting the validity of the patent in suit." *Id.* at 1359 (citing *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991)). By way of example, the Federal Circuit in *Amazon.com* described two sets of circumstances that could potentially present such a "clear case" by the patentee. *Id.* (citing 7 Donald S. Chisum, *Chisum on Patents* § 20.04[1][c], at 20-673 to 20-693 (1998)). The first would involve a patent that had withstood

previous validity challenges in other proceedings, and the second would involve a long period of acquiescence within the relevant industry. *Id.*

In the present case, Smash is unable to rely on either of the two examples set forth by the court in *Amazon.com*. Instead, NEPCO maintains that certain prior art references anticipated the '312 patent, thus rendering it invalid. At the summary judgment stage, "a prior art reference must disclose 'each and every limitation of the claimed invention.'" *Helifix Ltd. v. Blok-Lok*, 208 F.3d 1339, 1346 (Fed. Cir. 2000) (citing *In re Paulsen*, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994)). However, as the Court noted above, the Federal Circuit in *Amazon.com* established that prior art that does not disclose all of the limitations for purposes of summary judgment may still be sufficient to prevent issuance of a preliminary injunction if "enough doubt" is cast and if "key limitations" are taught. *Amazon.com*, 239 F.3d at 1359-60. The Court must now evaluate the prior art references presented by NEPCO as they relate to the claims of the '312 patent and determine whether the requisite vulnerability or clear case of validity has been established. The following prior art has been disclosed and presented to the Court for consideration with respect to this motion: (1) the Gem Lite; (2) the Palmer Patent, U.S. Patent No. 1,832,576; and (3) the Yang Patent, U.S. Patent No. 5,410,459.

The Gem Lite is an unpatented ornament sold by a company operating out of Wood Dale, Illinois.[1] The Gem Lite is comprised of about 50 Solo® drinking cups that have been glued together at their sides to create a large orb. The bottoms of the cups are all at the center of the orb, while the open ends face out. A string of lights is placed within the center of the orb and a single bulb protrudes through the bottom of each cup in order to illuminate the ornament. In

[1] For purposes of this motion only, Plaintiffs concede that the Gem Lite meets the relevant anticipation requirements established under 35 U.S.C. § 102.

effect, the cups act as lamp shade, albeit a clear one, for each bulb. Depending upon the type of plug at the end of the string of lights, it is conceivable that more than one Gem Lite could be strung together or that a single ornament could be illuminated on its own.

With respect to claim 1 of the '312 patent, the Court finds that the Gem Lite creates a significant question of fact as to whether the limitations contained therein were taught by the prior art. First, the Gem Lite is an ornament for use with a string of lights such that the lights protrude through the ornament so as to illuminate it. Second, while the Gem Lite is certainly different from the ornament in '312, it is not clear to the Court that a fact-finder could not find that the configuration of the drinking cups does not create a hollow shell. The '312 patent does not define shell other than by the limitations that the lights must protrude through it and that the space that the shell creates must be sufficient to contain the string of lights. It would appear that a fact-finder could find the Gem Lite to do just that. It was not until the hearing before the Court that Smash represented that a hollow shell must be comprised of a relatively continuous surface. Nowhere in the '312 patent is such language found. And, to the extent that the ornament within the '312 patent is created by a shell that is not a continuous surface, it is possible that a fact-finder could determine that the Gem Lite is comprised of a shell such as that exemplified by the '312 ornament. Third, to the extent that the limitation requiring at least one aperture defined in the exterior surface requires an opening from the interior of the ornament where the lights are contained through to the exterior of the ornament so that the end of the cord may be accessed, a fact-finder could find that the Gem Lite teaches this limitation as well.

The remaining claim argued by the parties is claim 11 which requires that the hollow shell be comprised of two parts. NEPCO maintains that claim 11 is invalidated by both the Palmer and Yang Patents. The Palmer Patent describes a star-shaped ornament that is created by

the joinder of two star forms, each with an underside-flange which, when joined with the other, creates a ridge along which a string of lights is run so that the bulbs protrude past the edge in order to illuminate the outline of the ornament. The Yang Patent describes an ornament comprised of two "shells," one is a flat panel that slides into the other which is a three dimensional form, which when meshed together create a channel to encapsulate the string of lights.

Both patents were cited by the Patent Examiner as references considered in granting the '312 Patent. While the Court has been presented with virtually no prosecution history other than the Palmer and Yang patents themselves, the Patent Examiner apparently found the prior art not to anticipate the patented claims. In general, a patent is presumed to be valid, and a patent examiner's decisions are to be treated with deference. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984). That is to say that with respect to evidence bearing on validity that has been considered by the patent examiner, a court should not impose its judgment simply because it disagrees with the evaluation of the relevant evidence. *Id.* While the Yang patent could be read to create a dispute of fact as to whether claim 11 of the '312 patent was anticipated, the Court finds that NEPCO has presented insufficient evidence to persuade the Court that it should not treat the Patent Examiner's decision on this issue with the requisite deference it is due.

While the Court finds that NEPCO has raised substantial questions with respect to some of the key limitations of the '312 patent, NEPCO has not met its burden with respect to the key limitation set forth in claim 11. To the extent that the court in *Amazon.com* held that prior art need not necessarily teach each and every limitation of the claims at issue in order to defeat a motion for preliminary injunction, the instant facts are distinct because, on one of the key

limitations, the prior art before this Court was also considered by the Patent Examiner. Effectively, the key limitation of claim 11 is left unchallenged. NEPCO has not met its burden of overcoming the deference due to the Patent Examiner's decisions, nor has it cast sufficient doubt on the overall validity of the '312 patent. The Court concludes that NEPCO has not raised the requisite substantial question of invalidity, and accordingly, the Court finds that Smash has established a likelihood of success on the merits.

**b. Irreparable Harm**

To establish the factor of irreparable harm, Smash primarily relies on its establishment of a likelihood of success on the merits. In addition, however, Smash contends that its right to exclude under the '312 patent cannot be adequately remedied by monetary damages. To the contrary, NEPCO maintains that the potential harm of which Smash complains is wholly compensable, and moreover, that Smash delayed for seven months before bringing the current lawsuit, thus indicating a lack of irreparable harm.

When a patentee makes a clear showing of both the infringement and validity of a patent, then there is a presumption that harm is irreparable. *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1558 (Fed. Cir. 1996) (citing *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir.1985)). The very nature of a patent provides the invaluable right to exclude, a violation of which inherently causes irreparable harm unless certain circumstances can be established, such as: (1) a pattern of granting licenses; (2) evidence that infringement is likely to cease; and (3) evidence of a delay in bringing suit. *Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996).

Evidence of any of the above exceptions has not been presented in this case. First, Smash has only granted an exclusive and a non-exclusive license to the same manufacturer. It is

admittedly impossible to predict with certainty what a company may do upon renegotiation of a license and its terms, regardless of the circumstances of the relevant market. However, the possibility is distinct that H.S. Craft will not renew its exclusive license with Smash if an unlicensed and unrestrained competitor is allowed into the market. There is also no evidence before the Court that NEPCO will cease to infringe the '312 patent. Indeed, both parties have represented that they intend to sell their ornaments for the upcoming holiday season. Finally, the evidence does not support a finding that Smash delayed in bringing the current suit. Over the course of several months, the parties exchanged letters and even met in attempts to settle the current dispute. For these reasons, the Court finds that the presumption of irreparable harm has not been overcome and that this factor also weighs in favor of granting the current motion.

**c. Balance of Harms**

As the Court has explained above, the potential harm to Smash if the injunction were not to issue would be irreparable. On the other hand, if the injunction were to issue and the outcome at trial to be in favor of NEPCO, then the potential harm to NEPCO would be wholly compensable based on factors such as its lost sales, inventory, and market share. Moreover, the fact that NEPCO knowingly engaged in conduct likely to be found in violation of the '312 patent once its own negotiations for a license were unsuccessful is indicative of NEPCO's assumption of the risk in this case. The Court finds that this factor as well tips in favor of granting the requested injunction.

**d. Public Interest**

There is a strong public interest in the protection of patent rights. *Smith Intern., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). Indeed, there is a similarly strong public interest in maintaining the proper scope to these rights so that future innovation and

invention may be encouraged and pursued. However, the balance of these interests must be maintained, especially given the possibility that flagrant infringement might otherwise be facilitated. *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 391 (Fed. Cir. 1987). The Court is loathe to allow that to occur and finds that, without the requested injunction, the risk of such an occurrence is significant under the facts as they have been presented. Accordingly, the Court finds that the public interest also weighs in favor of granting the injunction.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Preliminary Injunction (Doc. No. 10) is **GRANTED** such that:

a. Defendant New England Pottery Co., Inc. ("NEPCO"), its agents, servants, officers, directors, employees, attorneys, privies, representatives, successors, assigns, and parent and subsidiary corporations, and all persons in active concert or participation with any of them are preliminarily enjoined from making, using, selling, offering for sale, and importing into the United States the ornament known as the "Starlight Sphere," except Defendant is not enjoined from selling any ornaments that it legally purchased from Plaintiff or its licensee H.S. Craft Manufacturing Co.; and

b. Defendant NEPCO, its agents, servants, officers, directors, employees, attorneys, privies, representatives, successors, assigns, and parent and subsidiary corporations, and all persons in active concert or participation with any of them are preliminarily enjoined from otherwise making, using, selling, offering for sale, and importing into the United States the invention claimed in U.S. Patent No. 5,772,312; and

2. Plaintiff is required to enter a bond in the amount of $100,000; and

3. Consistent with the Court's Memorandum Opinion and Order, the Court is willing to accommodate an expedited trial schedule. If the parties are unable to agree upon a corresponding expedited discovery schedule, the parties should contact Beverly Riches, Magistrate Judge Susan Richard Nelson's Calendar Clerk, at 651-848-1200, to set up a scheduling conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.

Dated: October 15, 2001

DONOVAN W. FRANK
Judge of United States District Court