**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Smash LLC,**

**Plaintiff,**

**v.**

**New England Pottery Co., Inc.,**

**Defendant.**

**Civil No. 01-601 (DWF/SRN)**

**ORDER**

---

Terryl K. Qualey, Esq., on behalf of Plaintiff.

James J. Foster, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The parties reached a settlement agreement in the above-entitled matter, on October 31, 2001. That agreement was placed on the record as a binding settlement agreement and provided that the parties would proceed to draft final documents. The agreement also provided that the undersigned United States Magistrate Judge would arbitrate, "any disputes in the finalization of the agreements."

The parties now seek clarification of two disputes concerning what is properly included in the agreement.

This Order addresses those issues.

## I. CLAIM 11.

The settlement documents which form the record in this case include reference to Claim 11 of the subject patent. Defendant maintains that Claim 11of United States Patent No. 5,772,312, should not properly be part of the settlement agreement. It explains that Claim 11

FILED DEC 04 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

covers both types of ornaments that Plaintiff currently produces: (1) an ornament, "in which there are lightbulb apertures defined in the exterior surface of the hollow shell and lightbulbs project out of the shell," and (2) in which translucent members are secured to the exterior surface of the hollow shell and are illuminated by lightbulbs inside of the shell." Defendant contends that Plaintiff's patent is invalid with respect to the latter type, because Defendant had sold such product over a year before the patent was filed. Because the claims concerning the latter type should be found invalid, Defendant argues it "could not afford to pay a royalty on products that its competitors could now copy royalty-free." Therefore, Defendant maintains that it had no intention of having to pay Plaintiff royalties on such products. Instead, Defendant states that it understood the agreement only to cover the former ornament type, and should not have included Claim 11.

Plaintiff states that Claim 11 was identified in the Consent Judgment of Exhibit A from the outset of the settlement conference. Further, Plaintiff explains that although Defendant initially made allegations concerning the validity of Claim 11, Defendant never proved those allegations, "and that was part of what was compromised in the settlement." Therefore, Plaintiff concludes that the inclusion of Claim 11, as provided for in the October 31, 2001 settlement agreement, is binding on the parties.

## II. FLEET FARM.

The settlement agreement contemplates that Defendant will be precluded from selling its product to certain entities. Defendant asserts that it should not be prohibited from selling its product to one of these entities, Fleet Farm, as part of the settlement agreement. Defendant explains that part of the agreement anticipated that it would not sell its product to the customers

of Plaintiff's licensee H.C. Craft. A distinction existed, Defendant maintains, between its own "high-end" customers, and Craft's "low-end" retailers. Although Fleet Farm is a low-end retailer, Defendant explains that it was understood that Fleet Farm was actually one of its customers, rather than one of Craft's customers. Therefore, Defendant maintains that it did not contemplate being barred from selling to Fleet Farm.[1] Further, Defendant states that "adding Fleet Farm would not benefit Smash, as Smash would receive the same royalty on sales to Fleet Farm, whether those sales were made by NEPCO or by Craft." Therefore, Defendant concludes that it should not be barred from selling its products to Fleet Farm.

Plaintiff states, in short, that Fleet Farm was included in Exhibit C of the settlement agreement, and that Defendant's counsel "reviewed Exhibit C before it was entered in the record."

The Court finds that Claim 11 and Fleet Farm were both properly part of the binding settlement agreement entered into by both of the parties. The Court acknowledges that settlement conferences can be long and complicated, and further, that this particular settlement conference lasted many hours well into the evening, and involved many conversations. This fact is all the more reason that those final terms of a settlement, entered into the record knowingly by both parties, are binding, including any exhibits entered into the record. Further, it is counsels'

---

[1]Defendant's counsel has subsequently argued that Fleet Farm was not included in the document he drafted during the settlement conference, and that Fleet Farm was only added later to the modified final agreement without being disclosed to him. Specifically, Defendant's counsel asserts that "[i]n contrast to my printing, what appears as longhand was written by Mr. Qualey, e.g., the note in the bottom left hand corned next to 1E and changes to 1A and 1B." The Court observes that, in actuality, the longhand is Magistrate Judge Nelson's handwriting, and was written in during negotiations sometime prior to finalizing the settlement. Importantly, the document, Exhibit C, which was entered into the record, in the presence of Defendant's counsel, included Fleet Farm.

responsibility to review the documents which will become part of the record, and to pay attention and make any appropriate objections when these documents are being made part of the record. On reviewing its record, the Court finds that Exhibit A of the agreement includes Claim 11, and Exhibit C includes Fleet Farm. Both of these terms are clearly written on their respective exhibits and were clearly placed into the record at the time the agreement was made final.

As a final point, the Court observes that at the time of the settlement, Judge Frank's injunction was still in effect. Because of that injunction, the settlement agreement provided that "New England Pottery will not sell licensed products until the license is effective." This prohibition will remain in effect until Defendant obtains such a license.

Dated: December 3, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge